# Charter of Iron City Lodge No. 17. Improved Benevolent & Protective Order of Elks of the World.

*Corporations—Charter—Similarity of name.*

A charter for a proposed corporation to be known as "City Lodge No. 17, Improved Benevolent and Protective Order of Elks of the World," will be refused where objection is made by another corporation the corporate name of which is "Pittsburg Lodge, No. 11, Benevolent and Protective Order of Elks," and the evidence shows that the similarity of names of the two associations had already led to great confusion in connection with telephone messages, mail delivery and the clubhouse of the two associations, and that all the members of the lodge applying for the charter were negroes, while the objecting corporation's constitution confines membership to persons of the white race.

Argued April 30, 1909. Appeal, No. 16, April T., 1909, by J. Welford Holmes et al., from order of C. P. No. 1, Allegheny

Co., Sept. T., 1907, No. 84, refusing application for Charter of Iron City Lodge No. 17, Improved Benevolent & Protective Order of Elks of the World. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Exceptions to application for charter.

The court filed the following opinion:

The purposes of the proposed corporation are proper, the organization is composed of worthy citizens of this county, and the charter should be granted unless the exceptions are well taken.

They are filed by Pittsburg Lodge No. 11, Benevolent & Protective Order of Elks, a corporation incorporated by the court of common pleas No. 2, of this county in the year 1891, the lodge itself having existed since 1878, and they are in short that the application is made with intent to produce confusion in the public mind in respect to the identity of the proposed corporation and that of the exceptant and is a fraud upon the exceptant; and, secondly, that the effect of granting the charter would be to produce confusion in the public mind in respect to identity with consequent injury to the exceptant.

A third exception is that the application is contained upon more than one sheet of paper. With reference to this exception it is to be regretted that the practice of the courts of this county has been relaxed, and the rule laid down by Chief Justice LOWRIE In re Alexander Presbyterian Church, 30 Pa. 154, would be a wholesome addition to our rules of court. The writer of this opinion endeavored to enforce that practice but found that it was not uniform and has felt obliged to content himself with recommending that it be followed. This exception is not sustained.

The date of the organization of the order of which the applicant lodge is a part does not appear, although the lodge itself was organized in 1902. It was charged in the testimony with being an imitation, and we may safely assume that had it antedated that of the exceptant the fact would have appeared. It is a palpable imitation of the other organization not only in

name but in the denomination of its officers, in the insignia and emblems of the order, and it is apparent that an effort has been made to approach as nearly as possible without transgressing the line bounding the rights of the exceptant.  It is to be regretted that with nearly the whole animal kingdom to choose from the applicants did not select some name not already preempted.  With the enormous growth of social and fraternal organizations the time seems to be not far distant when the roll of names will be exhausted, but it is not yet at hand.

The distinguishing as well as the common appellation of the exceptants is "Elk."  The members are known as Elks, their clubhouse as "Elk's Lodge."  Its members wear a small metal elk's head, and the device B. P. O. E. is used to indicate the name of the order.  It is a fraternal order, and one of its principal purposes is beneficial in the aiding of sick members and the widows and children of those deceased.

The applicants' organization is in these respects identical except that the device was described by counsel as having a small I. before and a small W. after the B. P. O. E., and their house is known as "Elk's Rest."  They have, of course, a perfect right to have the same purposes, and the testimony as to the other matters is important in showing that they aid in creating the confusion which exists.

The exceptant's constitution confines the membership to persons of the white race.  There is no such limitation in that of the applicant, and thus far all of its members are of the negro race.  This fact, if known by the public, would prevent confusion as to which order a member belonged, but the ground of the objection made is not that the exceptant would lose members or business.  It is that confusion will result, in fact has already resulted.

There is no doubt that confusion has arisen.  Telephone calls to the wrong house, letters delivered to the exceptant's place intended for that of the applicant, a case of whisky, which both parties repudiate, was delivered with the bill to exceptant's clubhouse, and a large number of colored men have sought admission to the white men's building.

"But even without this, the authorities have settled that the

exclusive right of a corporation to its name is one that of itself carries the presumption of injury by interference and will therefore be protected:" MITCHELL, C. J., in American Clay Manufacturing Company v. American Clay Mfg. Co. of N. J., 198 Pa. 189. Although that was a case of a manufacturing corporation, it recognizes the right in a name. A beneficial society in a sense does business, and while it is not likely, as already said, that it will lose members the confusion in the minds of the public leading to mistakes in charging and delivering of goods, in the delivery of letters and in other ways will indoubtedly lead to financial loss. It was settled in that case that the intention was immaterial and cases were quoted and approved which held that the use of names not in all respects identical was an infringement upon the rights of those first to use them.

There are many cases in this state refusing incorporation under somewhat similar circumstances as this, but it is only necessary to quote a few. In First Presbyterian Church of Harrisburg, 2 Grant, 240, the application for a charter in that name was refused because the chief justice knew of the existence of The English Presbyterian Church of Harrisburg and he thought that each would be known as the Presbyterian Church of Harrisburg, leading to confusion. While this case would probably not now be so decided, the underlying idea has governed the courts. A charter to the "Grand Lodge of the Independent Order Sons of Progress" was refused on exceptions filed by the "Grand Lodge of the Order Sons of Progress," Judge ARNOLD disposing of the case in the brief sentences, "But the word 'Independent' is simply descriptive. The true name is Sons of Progress:" 14 W. N. C. 31. So here the word "Improved" is simply descriptive, and the names of the two organizations are practically identical. In Polish National Catholic Church of St. Francis, 31 Pa. Superior Ct. 87, and Philadelphia Lying-In Charity v. Maternity Hospital, 29 Pa. Superior Ct. 420, the Superior Court would not interfere with the discretion of the lower court but approved the refusal of the charters. In the first case the objecting corporation's name was the St. Francis Roman Catholic Church, that of the applicant the Polish National Catholic Church of St. Francis. In the other the proposed name was

"The Central Maternity and Hospital for Women," and that of the exceptant, "The Maternity Hospital." The court said, "The similarity of the name to that of another corporation having its hospital in the vicinity was a matter eminently proper for consideration by the court to whose sound legal discretion the application was addressed."

"St. Francis" were the prominent distinguishing words in each of the churches, and Benevolent & Protective Order of Elks are such here.

We have considered the able argument and briefs of counsel with care but think we have demonstrated by the decisions of our own state that our refusal of the charter is based upon sound legal discretion.

The application is refused.

*Error assigned* was decree refusing the charter.

*J. Welford Holmes*, for appellants.—It is a well-settled principle that the Superior Court will not review the discretion of the lower court in granting or refusing to grant a charter where there is nothing to show that the decree involved an abuse of discretion or where the decree of the lower court was based upon due consideration of local conditions and of all the pertinent facts and circumstances bearing upon the situation: Philadelphia Lying-In Charity v. Maternity Hospital, 29 Pa. Superior Ct. 420; Columbus Security Order, 27 W. N. C. 36; Colonial Dames of America v. Colonial Dames of N. Y., 71 N. Y. Supp. 1134; Coffeen v. Brunton, 5 McLean, 256; Gilman v. Hunnewell, 122 Mass. 139; Supreme Lodge Knights of Pythias v. Improved Order of Knights of Pythias, 113 Mich. 133 (71 N. W. Repr. 470); St. Joseph's Beneficial Society, 35 Pa. Superior Ct. 80.

*J. E. O'Donnell*, for appellees.—The granting of a charter is in the sound discretion of the court: Vaux' Appeal, 109 Pa. 497.

The use of similar name will be enjoined: Am. Clay Mfg. Co. v. Am. Clay Mfg. Co. of N. J., 198 Pa. 189; First Presby. Church of Harrisburg, 2 Grant, 240; Grand Lodge of the Order of Sons

of Progress v. Grand Lodge of the Independent Order Sons of Progress, 14 W. N. C. 31.

It has been held that though the applicant did not intend to deceive, if, as a matter of fact, its name was calculated to deceive, it must be restrained by injunction: Newby v. Ry. Co., 1 Deady, 609; Higgins Co. v. Higgins Soap Co., 144 N. Y. 462 (39 N. E. Repr. 490); Fort Pitt B. & L. Assn. v. Model Plan B. & L. Assn., 159 Pa. 308; North Cheshire & Manchester Brewing Co., Ltd., v. Manchester Brewing, Ltd., Law Reps. App. Cases (1899), 83.

The rule is not confined to commercial corporations: First Presbyterian Church of Harrisburg, 2 Grant, 240; Penna. Baptist State Convention v. Penna. Baptist State Convention (colored), 53 Pittsburg Legal Jour. 74.

PER CURIAM, May 21, 1909:

The able and earnest argument of appellant's counsel has not convinced us that the order complained of was not based upon sound legal discretion. On the contrary, the opinion filed by the learned judge below shows so satisfactorily that it was that we do not deem it necessary to add anything further to the discussion.

The order is affirmed.